The first case on the call is 124469 Ries v. The City of Chicago, Agenda No. 13. Mr. Kaminsky. Good morning, Justices. Good morning. My name is Stanley Kaminsky. I represent the Plaintiffs Appellants in this case. The issue in this case involves Section 8-11-6A2 of the Illinois Municipal Code, commonly referred to in the briefs as Section 6A2. And that section prohibits the imposition of municipal cigarette taxes and municipal tobacco products taxes that were not proposed prior to July 1st, 1993. The question for this court is whether this court should grandfather in and legalize the city's new tobacco products tax, even though that tax did not exist prior to July 1st, 1993, the date this prohibition went into effect. Or stated another way, how can the city's new tobacco products tax passed in 2016 be considered a grandfathered, pre-existing July 1st, 1993 tax if it did not exist prior to July 1st, 1993? We believe it's clear it cannot. Now the history of Section 6A2. Section 6A2 was originally a statutory blessing or authority for home-built units to impose cigarette taxes or tobacco products taxes, notwithstanding the rest of the provisions of Section 6A, which is a preemption provision. In 1993, the General Assembly made a major change to the section. The change it made was to limit municipal taxation of cigarette taxes or tobacco products taxes if such a tax was not imposed by the municipality prior to July 1st, 1993. Now the reason for this prohibition was straightforward. The General Assembly, the day before, had just argued in the past a major increase in the otherwise cigarette tax. It also just argued in the past a brand new tobacco products tax on tobacco products other than cigarettes. So the state General Assembly was concerned that its new taxes would affect state jobs, such as distributors leaving the state, manufacturers, and so forth. They were also concerned the following day when they were debating what to do about a proliferation of new municipal taxes. They were also concerned that a proliferation of municipal cigarette taxes or tobacco products taxes would hurt state jobs even more and would affect state revenues from the cigarette tax and the tobacco products tax. They were concerned that these future taxes would cut into the revenues and therefore hurt the state budget. That was the express reason for the prohibition in Section 6A. Now the plain language of Section 6A.2 states, quote, only a municipality that has not imposed a tax based on the number of units of cigarettes or tobacco products before July 1st, 1993 shall not impose such a tax after that date. Now if we just read this grammatically, using basic rules of grammar, noting that there's a coordinating conjunction there, this reads and means that a municipality that has not imposed a tax on the number of units of cigarettes or a tax on the number of units of tobacco products prior to July 1st, 1993 shall not impose such a tax after that date. The modifying clause is applied twice. It's just like saying if John wants to buy or John wants to buy a car or truck. Under grammar, that reads John wants to buy a car or John wants to buy a truck. You repeat the modifying clause. Could you address the argument that the statute doesn't read exactly the way you describe it? The statute says, as you indicated, that notwithstanding the foregoing, this section does not preempt any home rule imposed tax such as the following and then has seven different categories. For example, a tax over measured based on the use of a hotel or motel room or similar facility or etc. Lease receipts, a tax on food. So there's seven different categories that are affected by this statute. One of the categories is what we're talking about here, the number of units of cigarettes or tobacco products. The grammatical reading that the city suggests is that we should look at each one of these categories under themselves. Each category is separate among themselves. If you notice, none of the other categories was amended in 1993 to limit the imposition of a municipal tax on either of these items. If you look at the other items, such as a tax on hotel or motel rooms or similar facility, there you have the legislature making it absolutely clear that the item they were authorizing was a tax on a room. A hotel or motel room is exactly the same. It's the exact same product. Or similar facilities makes it clear they were doing a broad based tax authorization on rooms. Here they made it clear that we're talking about cigarettes or tobacco products. Indeed, at the time in 1993, Illinois regulated and taxed those products totally differently. They're manufactured differently, they're used differently, they're sold differently, and so that was understood by Illinois. If Illinois wanted to say you can tax any type of tobacco, they would have just said the city can impose a tax on tobacco. Or they could have done like they did with the hotel one, not any type of tobacco or any items related to tobacco. But that's not what they did. They were very precise in their language. And as the city pointed out, this was likely a negotiated provision with three or four municipalities that had cigarette taxes. The legislature was trying to prohibit all of these taxes that were imposed. They grandfathered in a handful of cigarette taxes that were already in existence. But nowhere is it suggested anywhere in either the language or in the debates that grandfathering in cigarette taxes would authorize 23 years later a separate tobacco products tax on totally different products. I mean, that was clear. And I think reading this grammatically, and there's no way you can read it grammatically the way the city wants to read it. I mean, we can't play with language and change some words. But grammatically, if you read this section and we read the change that was made in 93, it can only be read one way. Is the city wrong when they argue that the legislative history to the 1993 amendment supports the appellate court's analysis? Yes. There's nothing in the debates, and they couldn't cite anything in the debates that supports that analysis. There's nothing in the debates that say this was designed to be a negative tax, or this was designed to be a tax in general categories of tobacco products. If we look at the debates, the debates are clear that they're concerned about the proliferation of municipal taxes on these products. They're also the debates show that they were concerned that there was enough negotiations that they were concerned about existing local cigarette taxes. And they were trying to grandfather them in. Obviously, if the city is correct in what they're saying, then they would have just put in a provision that says, if you impose a cigarette tax prior to this date, then you can impose a cigarette tax or any other tobacco tax after that date. That would be consistent with the city's argument. That's not what was clearly negotiated at the time. The idea was to stop all these taxes and to basically authorize existing taxes at the time. The only existing tax at the time was four local cigarette taxes. Nowhere does it suggest that imposing that would authorize future taxes. And I do want to point out that the city understood this. For 23 years, the city didn't do this. They never imposed tobacco products taxes. They went to the legislature three times to try to get the law changed. They went to the city council once and tried to get a resolution through the city council to basically ask the General Assembly to change the law, to let them tax the tobacco products. So not only did the original General Assembly not think they could do it, future General Assemblies didn't think they could tax it, and the city itself didn't think they could tax it. Back to the debates for a minute. The city mentions that the sponsor sent the tax. Sponsors made a number of statements that were inconsistent. They were paraphrasing, using different terms. What a sponsor says, a sponsor also didn't say tobacco products, they said tobacco price. And this allows a tobacco price. They misstate words all the time. We have to actually look at the words of the law. We have to read what was written by them, what was negotiated. The plain language of the law was this and this. The city knew it, the legislature knew it, the subsequent legislature knew it, everyone knew it. The city just got tired of waiting for the legislature to change the law. Counsel, at the time the legislation was enacted, was any municipality taxing other tobacco products? And then does it make any difference? The answer is no, and it doesn't make any difference. Because the idea was the legislature was going to ban all cigarettes and tobacco products. They put in the prior to July 1st, 1993, to allow the city's cigarette taxes, but there were no local tobacco products. Actually, the state imposed its first tobacco products tax the day before this prohibition came up. They were debating and putting it in. It was fresh in their minds that they were adding tobacco products to this law because the day before they had authorized it. They were concerned the day before that if they allowed the city to impose these taxes, it would cut into their revenues. And it will. I mean, the city has already admitted that this is designed to reduce sales. The city's tax will force people to buy on the internet, force people to go to Indiana or Wisconsin. This will reduce tax revenues for the state. The state will lose, who knows, tens of millions of dollars. But then the city says that that's one of their goals, is to reduce sales. The point is, this is not about issues with cigarettes or issues with tobacco products. This is about the legislature trying to protect state revenues and state jobs. That's the whole purpose of this prohibition. This tax law was passed originally to authorize and then was amended to limit that authorization. Right now, the issue before this court is, should that authorization and the limitations still be around, or should we change that? Should we grandfather in something that was never grandfathered in? As a result of this change, the city's OTT test, which was not passed until 2006, was not grandfathered, as I mentioned, under Section 682. Therefore, it's directly prohibited by Section 682. As I mentioned before, the city for 23 years can do this. Actually, there is no other municipality I know of that has ever passed the tobacco products tax because it's been prohibited by the state legislature. The city's arguments basically center around a few things. First, since they passed the cigarette tax prior to July 1, 1993, and that tax was grandfathered, that automatically grandfathers in any future tobacco products tax. That would be contrary to the plain wording of the law, as well as the legislative intent to stop the proliferation of these taxes. As I mentioned, if you look at the debates, nowhere does it mention that the passage of mere cigarette tax by the city would authorize future taxes on tobacco products. The city also argues that basically notwithstanding the actual language of the law, that really the legislature was intending to authorize general categories of tax. Cigarettes and tobacco products were just categories of tobacco products. Again, the basic problem with this issue is that if the legislature really wanted to say that, they could have said that. They could have said, we authorize the tax on tobacco of whatever nature and form. They could have worded it like that or worded it like they did for the hotels. They could have said hotel or motel room or similar facilities. They could have been a much broader category. They didn't do that. Instead, they wrote this very precise, very grammatically correct, to say that they're prohibiting tobacco products tax or a cigarette tax if such a tax was not passed before July 1st, 1990. Counsel, let's address the use of the word or in the statute. The appellate court construed the word or to mean and, and to be inclusive. What do you think about the appellate court's construction of the word or? Well, the appellate court said that the clause can be read to mean that you can pass or tax cigarettes or tobacco products or you can impose a tax on cigarettes and you can impose a tax on tobacco products. But they meant it to be inclusive according to the appellate court. The problem is, you have to read all of that in context. Everything depends on the context in which something is written. We all agree, everything depends on the context. The first part says that they can impose a tax on cigarettes or tobacco products or on both. The second part says, if you impose, you still have the choice to impose a tax on cigarettes or tobacco products or both. But if you did not impose a tax on tobacco products, you chose not to, then such a tax, and as the city admits, such a tax means this or that. This tax, cigarette tax, or that tax, tobacco tax. Such a tax is prohibited by law. So yes, it's inclusive. It gives a choice. But that choice doesn't mean that if they didn't choose it, it's authorized. They still have to choose it. They still have to pass it. They didn't pass it. So the appellate court, I don't want to get into everything on the appellate court. I don't agree with almost any of their reasoning. But I think the appellate court was just wrong because they were taking apples and oranges and they were trying to say they're the same. And they're just not. They ignored the context in which terms were used. They ignored the fact that the choice was given and the choice wasn't given by the city. Thank you. I'm satisfied. Now, if we really break down the city's argument, which really it's not, the city's really asking this court to rewrite Section 618. It wants it to say that this is a general category. It doesn't really say cigarettes or tobacco products. It doesn't really say such a tax. It doesn't say any of these things. It's really saying as long as they pass any type of tobacco-related tax prior to July 1st, that any future tobacco-related tax should be passed. I don't know of any statutory rule of construction that allows it. I think it is. I just do not understand the argument that this should be, like the appellate court did, add a number of words, take out a bunch of words, and say here's how we can make this fit into this situation. The city also argues that the Section 682 is vague. But again, the section is clear on its face. All you have to do is read it grammatically. The legislature knew exactly what they were doing. There's no vagueness in it at all. Moreover, if there is any ambiguity, it must be construed strictly against taxation. As this court has said multiple times in dozens and dozens of cases dealing with tax laws that authorize or limit the authority to impose a tax or give limitations on the scope of a tax, quote, where there is doubt, the statute is construed most strongly against the government and in favor of the taxpayer. Again, that's important to protect taxpayers from cases that are not allowed or authorized or their scope is being exceeded. Finally, the city argues that it's multiple attempts to change the law should be ignored by this court. But these multiple attempts to go to the legislature, ask the legislature to take out board tobacco products, ask the legislature to say please pass a clarification or a change in the law so that we can tax tobacco products, their movement to the city council to say please pass a resolution so we can tax tobacco products, all show that the city knew they couldn't tax tobacco products. It also shows to the base in the General Assembly that subsequent General Assemblies knew they couldn't tax these products. Because if this was just a simple clarification, if they always could do this, what would have been the difficulty in a General Assembly passing this out of these multiple requests if it really didn't change anything? How do we factor that into any opinion? Does that help interpret the statute? I do not, while it is not evidence how the original statute was written, I think it is evidence that it's plain language is what should be used by the court. Because it's plain language is what the city understood barred them. Plain language is what the legislature understood barred the city. And I think it's all some evidence that that's what should be used and that plain language shouldn't be overridden based upon the city's desires to tax these products. Mr. Kaminsky, let me follow up on Chief Justice Carver. What specific case authority would allow us to look at legislative attempts? Well, I cited the Bob Jones case, which was a U.S. Supreme Court case. And in that case, the U.S. Supreme Court looked at multiple attempts to change the law. And they said there's multiple attempts, not just one attempt, multiple attempts, was some evidence that the law was the way it was being interpreted, that it wasn't the way being requested by the people challenging it. This court has also said, dealing with administrative interpretation, which is even worse than administrative interpretation, we have the city itself interpreting the law this way, that subsequent actions of the legislature not to change the law, even though it had been interpreted a certain way by an administrative body for years, is also evidence that the law should be interpreted the way it was originally written, or plain language, and the way it had been interpreted by the parties in the administration. So I think both of those give some authority to this court that adds weight to the argument that we've made. Mr. Kaminsky, your time has expired. Thank you. Ellen McLaughlin on behalf of defendants, the City of Chicago, and its Comptroller. May it please the Court. The appellate court's judgment should be affirmed because the Illinois Municipal Code does not preempt the city's home rule authority to tax non-cigarette tobacco products. As I'll explain with plain language, Section 6A2 of the Municipal Code does not preempt the city from taxing tobacco products. Section 6A2 preempts home rule municipalities that had not imposed a tax based on the number of units of cigarettes or tobacco products prior to July 1, 1993, from taxing in that category of products. The city had a tax prior to that date on cigarettes, and therefore it is not a home rule municipality to which this preemption applies. Furthermore, the legislative history of the limitation clause added in 1993 on which plaintiffs rely is also consistent with our position. It shows that the General Assembly's understanding was that those home rule units that had imposed taxes based on the number of units of tobacco products prior to 1993 could continue to do so, while other home rule units were preempted from entering into that category of taxation. And finally, to the extent that Section 6A2 is at all ambiguous, the principle that governs this Court's analysis is that the preemption of home rule power, including home rule taxing power, must be explicit. And that means that if the scope of preemption by the General Assembly is not clear, this case should be decided in favor of preserving the city's home rule tax power. I'll begin with the plain language of Section 6A of the Municipal Code. Plaintiffs focused primarily on the limitation clause, which was added in 1993. But I think it's helpful to take a step back first and look at what Section 6A of the Municipal Code does, because I do believe that Mr. Kaminsky has somewhat misconstrued that statute. Section 6A is enacted against a backdrop of home rule tax power. Home rule municipalities, as you know, derive their tax power directly from the 1970 Constitution. It's set up explicitly in Article 7, 6A of the Constitution. The statute that we're dealing with today was then enacted to preempt some of that home rule power to impose various types of taxes. Thus, the statute states, I quote, no home rule municipality has the authority to impose pursuant to its home rule authority, and then goes on to list various types of taxes. But the preemption of home rule power was not total, as the next sentence begins, notwithstanding the foregoing, and then sets out seven general categories of taxes in which home rule tax power was not preempted. Among those, of course, was Section 6A-2, a tax based on the number of units of cigarettes per household, and a tax based on the number of units of tobacco products. Therefore, home rule municipalities retained their constitutional taxing power in that category. And in that category, they could choose to tax cigarettes or tobacco products or both, if they so chose. To respond to the question about or, here, when we're using cigarettes, tobacco products, or both, I'm referring to that as an exclusive disjunction, meaning they can choose one alternative, the other, or both. And indeed, plaintiffs agree that that is a reasonable use in this statute is how it should be interpreted. One, the other alternative, or both, a general category of products in which home rule units could choose to tax. It's important to note, again, that this is a statute that preempted home rule tax power. It is not, as Mr. Kaminsky suggested, a statute that authorized home rule units to tax. And that's an important distinction when we talk about what presumption is if any should apply to our construction of the statute. When we're talking about a statute that preempts home rule power, that's quite different than when we interpret a statute that authorizes taxes. And so I think it's important to be clear on that at the beginning. Then moving on to this limitation clause. Counsel, when you get into a construction of the word or, don't we also have to consider the language such a tax after that date? How does that factor into this construction? Such a tax is actually a further confirmation that the city's tax power was not preempted. The word such a tax do not refer separately to a tax on cigarettes and a tax on tobacco products. Rather, it refers back to the antecedent, a tax. What kind of tax? A tax based on the number of units of cigarettes. But such a tax, isn't that singular? Which means it could be the number of units of cigarettes is such a tax, or tobacco products is such a tax. It could have been written that way, Your Honor. The way it was written, a tax appears but once in this phrase, and such a tax refers back to a tax. Again, what type of tax? Based on the number of units of cigarettes or tobacco products. Thus, there is, the word such a tax is not intended to refer back to a tax. For the reference to such a tax in the singular, referring back to a single appearance of a tax in this language suggests this is intended as a singular tax category. It could, of course, have been written to be a tax on cigarettes or a tax on tobacco products, and then we'd have two antecedents, and such a tax might refer back to either. That's not the way they wrote it. They treated it as a singular category. So again, the use of such a tax does support the city's argument that this is the proper interpretation. Mr. Blackman, I want to get back to your authorization of taxation versus preemption. I want to make sure I understand your argument. Is your argument that since, in your opinion, it's a preemption statute, ambiguity would lie in favor of home rule, right? Versus whether, I believe, opposing counsel indicated that since a tax would be being imposed, if it was a tax authorization, statute, then ambiguity would lie in favor of not taxing, right? So that's what the importance is. Do I have that right? Yes, I think so, Your Honor. And of course, this is a home rule preemption statute. As we know, home rule is construed liberally. The General Assembly must state specifically the extent to which a law preempts home rule power, and where the General Assembly has not so specifically stated, home rule is preempted, then the home rule power is retained. Thus, therefore, here, and if the court does believe that the statute is ambiguous, and the appellate court found it's not, it plainly permits the city's tax power in this area, but should you find it ambiguous, then the presumption would be that the home rule power is preserved, because the General Assembly would not have spoken clearly and explicitly to preempt that. Plaintiffs do try to flip that presumption regarding the preemption of home rule power on its head by labeling this a tax statute. It is not a grant, again, of tax power. The city derives its power to tax directly from the Constitution, and it does not require statutory authority to tax. Plaintiffs, in fact, don't cite a single case that holds that Section 682 is a tax statute that would be strictly construed against a municipality. We found no such case. I'm pretty confident in saying there is no such case. To the contrary, the case law holds that home rule power is preserved unless it's specifically and clearly preempted. I'll just return now to the limitation clause and spend another moment on that. The limitation clause states, provided, however, that a home rule municipality that has not imposed a tax based on the number of units of cigarettes or tobacco products before July 1, 1993, shall not impose such a tax after that date. That limitation added in 1993 is addressed to certain home rule municipalities. Which ones? Those that had not imposed a tax based on the number of units of cigarettes or tobacco products prior to July 1, 1993. Those municipalities are now preempted from taxing in this category. That limitation is not addressed to those municipalities, including the city, that had imposed a tax in this category prior to July 1, 1993. They are not affected by the preemption and they retain their home rule power to impose taxes in this category. In addition to the fact that the limitation clause is addressed not to particular taxes but to particular municipalities, I'd like to mention two other aspects of the plain language that support our argument. First of all, the phrase tax based on the number of units of cigarettes or tobacco products is repeated in the statute. It should be presumed to have the same meaning. This was what the appellate court found most relevant in the language. Plaintiffs actually acknowledge in their reply brief that as first used it describes the general category of taxes in which home rule units can tax one alternative, the other, or both. The General Assembly mirrored that exact same language when it created the limitation clause and it deliberately did so so as to prevent those home rule units that had not imposed a tax in that general category on cigarettes, tobacco products, or both from doing so in the future. The city is not one of those municipalities because it had imposed a tax in that general category. And as I believe Justice Garmon mentioned, in 1993 when the limitation was added, no home rule municipality had imposed a tax on tobacco products. So under plaintiff's reading, there would be no home rule unit that would retain home rule power to tax tobacco products. But yet, in adding the limitation in 1993, the General Assembly retained the reference to tobacco products and then it repeated it. This court should presume that that language is meaningful and the city's interpretation is the only one that gives that reference to tobacco products meaning. What does it mean? It is part of a description of a general category of products in which home rule tax power was retained under Section 6A and then it is part of a description of a general category in which certain home rule units, not including the city, were then preempted from taxing. Again, the statute should be read so as to render all of its language meaningful and plaintiff's interpretation renders the reference to tobacco products meaningless. The legislative history of Section 6A2 does support our argument as well. It shows that the General Assembly did not impose a tax on home rule units that had a tax in the category of cigarettes and tobacco products to continue imposing such a tax. Transcripts from those debates in 1993 show that legislators believed that the limitation clause would not apply to home rule units with existing cigarette taxes. Plaintiff mentions these debates but does not quote them. With good reason, I will quote them for you and I think it shows the way that the General Assembly understood this limitation. The bill's sponsor in the House, Representative Hicks, stated that the amendment applies to only home rule units who have not before implemented such a tax. The bill's opponents understood it the same way. Representative Dunn opposed the bill in the House and stated, this amendment exempts the City of Chicago and three other communities which have a tax on the books. Representative Murphy stated, the bill clearly is exempting Cook County, Rosemont, Evanston, and the City of Chicago. This discussion shows that whether they liked the bill or not, legislators understood that Chicago and other home rule units that imposed a cigarette tax prior to July 1st, 1993 would not be affected by the amendment and other home rule units that had not yet entered the tax category were the ones who would not be permitted to do so. At the time of these debates, was the legislature concerned about diminishing revenues? And if that's the case, would the legislature be concerned about diminishing revenues? If that's the case, then how does that square with your argument? Your Honor, they were concerned about diminishing revenues and the 1993 amendment reflected a compromise. On one hand, by limiting the number of home rule municipalities that could tax cigarettes and tobacco products, limiting it to only four cities, the General Assembly sought to provide economic relief to tobacco companies and to safeguard state tax revenue. On the other hand, this amendment was unlikely to pass without the support of the legislators from Chicago and the other entities that had existing cigarette taxes. It required approval by three-fifths of the House. In the end, it passed with only 71 votes, 78 votes, so it barely made it past that three-fifths required to pass. Without the support of those units with existing taxes in the category, it would not pass. To secure that necessary support, the amendment provided that the preemption would not apply to those home rule units that had imposed a tax on cigarettes or tobacco products as of July 1, 1993. And not a single representative from Chicago or the other units with existing cigarette taxes opposed the amendment, which would make little sense if, as plaintiffs argue, it would have completely preempted their home rule power to tax tobacco products. So one other thing about the legislative history that was mentioned is that the legislators did discuss this as in terms of a single category, that tax. That makes sense. The legislators viewed these apparently as similar products and probably understood that to effectively regulate tobacco requires dealing with it as a category, not as separate taxes. But there certainly was no mention of the idea that cigarettes and tobacco products should be treated separately for purposes of preemption. If the General Assembly intended to eliminate all future taxes on tobacco products, not only would we expect that it would have just taken the reference to tobacco products out of the law altogether, but we would expect some discussion of that. If a whole area of taxation were to be eliminated, surely they would have mentioned that. There is absolutely no mention of that in the 1993 debates. So again, it was a compromise. Yes, it was designed to protect jobs and revenues. It was also designed to secure votes from those home rule units with existing taxes on the books. And to do that, the compromise that they reached was to carve out home rule units that had not yet entered into the tax category and preempt those from imposing further taxes on the category. I will say just a few words about the attempts to clarify the law that were made in 2011 and 2014. First of all, they are not relevant to an interpretation of a statute that was passed 21 years prior by a different General Assembly. The General Assembly passed the act. And so these debates really have no bearing. And there is no authority that suggests that they do. The lone case that plaintiff has cited to you was Bob Jones. In cases that plaintiff cites, including that one, the court considered whether, the court interpreting the statute, considered whether the agency's construction of a term was reasonable and looked at debates that analyzed that construction or looked at the failure of a legislative committee to act in response to an agency's construction of a statute. Here, there is no administrative body or agency that interpreted this statute. And thus, we don't see the legislature acquiescing in a particular interpretation. There's nothing of that nature. And therefore, the cases that suggest that legislative acquiescence in an administrative interpretation of a law could be guidance as to its meaning or intent, that does not apply here. Therefore, the court has no authority to say that the discussion of later bills or the fact that the later bills were proposed is not relevant. But even if it were, those were attempts to clarify the existing law. The city, of course, wanted to avoid a lawsuit, knowing that if it passes the tax, it's likely to be sued. And that's precisely, unfortunately, what's happened here. We've been waiting three years to implement this law and try to avoid legal challenges does make sense. The only instance of one of these bills reaching floor debate demonstrates that that was the purpose. In 2014, the bill's sponsor in the Senate, Senator Katowski, introduced the bill and explained that municipalities with existing cigarette taxes have the authority to tax these products. It just makes sure that no one can raise the argument that they don't have the authority to do that. So it provides clarification. And the Senate did pass that bill. That's the only example of any debate that we have on these subsequent attempts to clarify the law. And it suggests that, in fact, the Senate agreed with Senator Katowski that this was a clarification of existing law. So to the extent it has any bearing, it is, well, it doesn't have any bearing. But it should also be understood as an attempt to avoid potential litigation by providing greater clarity. If the court has no further questions, then I'll conclude. The plain language of Section 682 does not preempt the city from imposing a tax based on the number of units of cigarettes and tobacco products. The legislative history supports that interpretation. And should there be any doubt, the presumption in favor of homopower applies to preserve the city's tax power in this area. We therefore request that the judgment of the appellate court be affirmed. Thank you. Just a few points, Your Honor. First of all, with respect to homopower. Section 68 specifically eliminates homopower. Yes, the city had the homopower to impose a tax on cigarettes and had the homopower to make tobacco products. Section 68 was designed by the legislature to eliminate these homopowers. It specifically says, quote, this section is a limitation pursuant to Section G of Section 6 of Article 7 of the Illinois Constitution on the power of homo units. So this section was designed to eliminate homopower. It substituted statutory power. And in 1993, it limited that statutory power to state that if you did not impose a tax on cigarettes or a tax on tobacco products, by July 1, 1993, you cannot impose such a tax after that date. And as everyone acknowledges, such a tax means either or, this or that. It doesn't mean some nebulous tax that's out there. It means exactly the way it was written. So the issue here is how we interpret Section 682. The other question was, does this authorize a tax? Well, the appellate court on three occasions now has taken the time to evaluate Section 68 and its various subsections and has ruled that the various subsections do authorize taxation, independent authorization to impose these taxes. It basically substituted state authorization to impose these taxes. The appellate court has said this on three occasions. I agree. Because if you look at the sections in Section 68, you have a section dealing with a tax on hotel rooms, a section dealing with a tax on real estate, a section dealing with this one, a tax on a number of units of tobacco products. Nowhere in the first sentence of Section 68 is that prohibited. Is that directly prohibited? Instead, that section, the first section deals with taxes on sales of property based on gross receipts and sales. So the appellate court said these provisions can only, unless they're purely meaningless, can only be authorization sections. The statute was being authorized. And after it authorized the tax in 1993, the state took back some of that authorization. And as this court knows, in interpreting a tax statute, not just the authorizing language, but all the language of a tax statute, as this court held in the Quad Cities case, as this court held in the Ghetto case, as this court held in the Canteen case, which had a limitation on how you tax food, this court has always applied a strict instruction when you deal with a taxing statute. No matter what the provision you're looking at, whether it limits, expands, or contracts the scope of the tax, this court has always applied that. Mr. Kaminsky, both you and counsel for the city argue that the plain language of a statute controls, that there's no ambiguity, that we have the circuit court holding one thing and the appellate court another, and you're taking diametrically opposed interpretations. How do we decide this case on the basis of plain language? Is it focusing on the word are as inclusive or exclusive, or is there something else? Well, I think this court has stated in the past that you look at a structure of a sentence based on its grammatical reading, and that unless there's a reason to depart from the grammatical reading of the law, that that's what was intended by the legislature. If we apply basic grammar here, this is an easy construction. Even the city agrees that if this means a tax on the number of units of cigarettes, or a tax on the number of units of apple products, then they lose. That's the way it reads grammatically. So, not only is it the way it reads grammatically, it's the way it was intended. If we're looking at purely the plain language of the law, and we read it just grammatically, this is a simple case. It's a simple case for the circuit court. Obviously the appellate court applied a number of mental gymnastics to reach the conclusion they wanted to for the city. I just don't agree with their conclusions or how they reached it. But I think if this court just goes back to the basics, this is an easy case. The city also says that when they went to the General Assembly on multiple occasions, they were just trying to clarify the law. If you look at the changes they suggested, it was to take out words. That's not clarifying the law, that's directly changing the law. I don't know of any clarification where you actually take out words so that you can impose a tax on those items. So the city knew what it was doing then, and it knows what it's doing now. I think the laws here, I don't think there's... I don't think that the city is requesting this court do, try to put the language in different ways, reinterpret the law in general categories, take out the word such a tax and replace it with just a tax. I think we just have to look at this straightforward, apply basic grammar, basic sense structure, look at the underlying purpose of the law, and we're done. Thank you.